# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHNNA ERICKSON,<br><br>                             Plaintiff,<br>    v.<br>AMN HEALTHCARE SERVICES, INC.,<br><br>                            Defendant. | Case No. 09cv910 BTM (CAB)<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT** |

Defendant AMN Healthcare Services, Inc. ("AMN") has filed a motion for summary judgment [Doc. 23]. Plaintiff has not filed an opposition. For the following reasons, the Court **GRANTS** the motion and **DISMISSES** this suit in its entirety.

## I. BACKGROUND[1]

This is an employment discrimination case. AMN Healthcare terminated Plaintiff in November 2007. Plaintiff alleges AMN fired her because she took maternity leave, and because of her age and sex. She also claims wrongful termination and breach of implied contract.

The factual record consists only of Defendant's submission as Plaintiff has not

---

[1] Some of the facts discussed below are based on a declaration from Jeanne Beirich, a manager at AMN. Although her declaration contains hearsay, the Court may still consider the hearsay statements because Plaintiff has not objected. *Fed. Deposit Ins. Corp. v. New Hampshire Ins. Co.*, 953 F.2d 478, 484–85 (9th Cir. 1991).

responded.[2]

Plaintiff is thirty-three years old. She started working at AMN as a billing specialist and held a variety of positions after that. Her positions were all generally related to billing and accounting, though she later also became a team lead, which added some supervisory responsibilities. When AMN fired her in November 2007, her job title was Client Accounting Representative, Team Lead.

Plaintiff has taken two maternity leaves. She took the first in 2003 and was gone for about five months. She admits she was not treated any differently when she returned from her first maternity leave. She took the second in 2007. That one was also about five months; she left in mid-February and returned on July 27, 2007. It was when she returned, she alleges, that her difficulties at work began.

Plaintiff returned to the same position she had left and reported to the same supervisor: Bill Collins. But a woman named Andre Meyers-Renfro replaced Collins as Plaintiff's supervisor in August 2007. Plaintiff had applied for that same supervisory position during her maternity leave but Meyers-Renfro got the job instead.

Meyers-Renfro had concerns about Plaintiff's attitude and leadership style. Meyers-Renfro's supervisor, Jeanne Beirich, also shared her concerns. On October 4, 2007, Meyers-Renfro counseled Plaintiff about negative comments Plaintiff made about a fellow team lead.

After that meeting, Meyers-Renfro and Beirich met with Plaintiff on October 16, 2007 to discuss work goals related to a new incentive-based compensation scheme for accounting employees like Plaintiff. According to Beirich, during that meeting Plaintiff was extremely confrontational, insubordinate, and unprofessional. She suggested that her team could make it so difficult for Meyers-Renfro and Beirich that the team could force them out. Beirich considered firing her based on her behavior in that meeting alone.

---

[2] After this motion was submitted, Plaintiff's attorney called chambers to indicate that she would be filing a statement with the Court explaining why there was good cause to submit a late opposition. The Court waited several weeks, but she never submitted anything to the Court.

But after consulting with the human resources department, Beirich and others decided to give Plaintiff a Performance Improvement Plan ("PIP"). Plaintiff and Meyers-Renfro signed the PIP on October 19, 2007. The PIP outlined what happened at the October 16 meeting and the incident where she made negative comments about another team lead. The PIP warned Plaintiff that if she did not immediately improve her job performance, AMN would take "further corrective action up to and including immediate termination."

Plaintiff wrote a seven-page response to the PIP, which Beirich believed mischaracterized what happened at the October 16 meeting.

Plaintiff's behavior did not improve, and one last incident caused Defendant to terminate her employment. Plaintiff four times called another team lead, Deanna Muhlhun, outside of work hours, asking about a confidential meeting Muhlhun had with human resources. Muhlhun was upset and she complained about Plaintiff's behavior, and three managers had to help resolve the conflict. After consulting with human resources, Beirich decided to terminate Plaintiff.

At the time Defendant terminated Plaintiff, eighteen of twenty-three employees in the accounting department were women. In 2008, 73% of the people in the entire office were women, and five of ten members of the executive committee were women, including the CEO and general counsel. Women regularly take maternity leave; it is the most common reason for a leave of absence. Defendant regularly authorizes maternity leaves of absence longer than the legally required three-month period. Defendant even has lactation rooms for mothers returning from leave who need to pump breast milk, and keeps an "expectant mother" parking spot at its corporate headquarters.

## II. LEGAL STANDARD

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil

//
//
//

Procedure if the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997). A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248.

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to establish an essential element of the nonmoving party's case on which the nonmoving party bears the burden of proving at trial. *Id.* at 322-23. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

Once the moving party establishes the absence of genuine issues of material fact, the burden shifts to the nonmoving party to set forth facts showing that a genuine issue of disputed fact remains. *Celotex*, 477 U.S. at 314. The nonmoving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of his pleadings." *Anderson*, 477 U.S. at 256. When ruling on a summary judgment motion, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III. DISCUSSION

**1.    First and Second Causes of Action Under the FMLA and CFRA**

Plaintiff asserts claims under the Family Medical Leave Act, 29 U.S.C. § 2606 *et seq.* ("FMLA"), and the California Family Rights Act, California Government Code §§ 12945.2,

19702.3 ("CFRA"). In order to succeed on her FMLA claim, she must prove (1) she took FMLA-protected leave, (2) she suffered adverse employment actions, and (3) the adverse actions were causally related to her FMLA leave. *See Bachelder v. America West Airlines, Inc.*, 259 F.3d 1112, 1124–25 (9th Cir. 2001). Taking the FMLA-protected leave must not have been a negative factor in the decision to terminate her. *Id.* at 1125. Similarly, under the CFRA, "[a]n employee who takes CFRA leave is guaranteed that taking leave will not result in . . . adverse employment actions." *Neisendorf v. Levi Strauss & Co.*, 143 Cal. App. 4th 509, 517 (2006).

There is no evidence that Plaintiff's termination was related to her maternity leave. The only evidence before the Court shows that Defendant terminated her because of insubordination and disruptive behavior. Although in her deposition Plaintiff said Meyers-Renfro would make comments like, "Oh, is it that time again?" or "Is that where you were?" when Plaintiff was on her way to or from the lactation room, (Not. of Lodg., Ex. A at 34), these comments are not enough to create a genuine dispute about why she was fired. First, pumping breast milk is not protected by the FMLA or CFRA. Second, these comments are insufficient to show that Plaintiff's maternity leave played a role in Defendant's decision to terminate her. Plaintiff's trips to the lactation room were never mentioned in the PIP, and there is no evidence that Plaintiff's supervisors mentioned this as a reason for terminating her. And third, Plaintiff has not responded to, and has therefore admitted, Defendant's requests for admission, which included an admission that Plaintiff was not retaliated against because she took FMLA or CFRA leave. *See* Fed. R. Civ. P. 36(a)(3); (Not. of Lodg., Ex. E.)

The Court **GRANTS** summary judgment in favor of Defendant on Plaintiff's first and second causes of action.

**2.    Third Cause of Action Under the FEHA**

Plaintiff also asserts a claim under the California Fair Employment and Housing Act, Government Code § 12900 *et seq.* ("FEHA"). She appears to allege that Defendant

discriminated against her on the basis of her sex and age.

As an initial matter, Plaintiff's sex discrimination claim fails because she did not exhaust her administrative remedies. *Rojo v. Kliger*, 52 Cal. 3d 65, 83 (1990). Although she filed a claim with the Department of Fair Employment and Housing, the claim did not allege sex discrimination. (Not. of Lodg., Ex. F.) And each claim must be specifically pled in order to meet the exhaustion requirement. *See Yurick v. Superior Ct.*, 209 Cal. App. 3d 1116, 1122–23 (1989) (administrative claim of gender discrimination did not encompass age discrimination claim).

By failing to respond to requests for admission, she also admitted that she was not terminated because of her sex. (Not. of Lodg., Ex. E.)

Plaintiff has failed to exhaust her administrative remedies on her sex discrimination claim under FEHA and admitted that she was not discriminated against because of her sex. The Court **GRANTS** summary judgment in favor of Defendant on this claim.

Plaintiff also alleges age discrimination, which she did include in her administrative claim. (Not. of Lodg., Ex. F.) But Plaintiff must be over forty to claim age discrimination under FEHA, *Gibss v. Consolidated Servs.*, 111 Cal. App. 4th 794, 799 (2003), and she is not, (Erickson Dep., 15:9). She was thirty-three when Defendant terminated her. She also admits that she was not discriminated against because of her age. (Not. of Lodg., Ex. E.) The Court **GRANTS** summary judgment in favor of Defendant on Plaintiff's FEHA age discrimination claim.

**3.    Fourth Cause of Action for Violation of Public Policy Based on Sex and Age Discrimination**

Plaintiff also alleges that Defendant violated the public policy against sex and age discrimination. Unlike Plaintiff's statutory FEHA claim, a claim based on public policy is not subject to the administrative exhaustion requirement. *Stevenson v. Superior Ct.*, 16 Cal. 4th 880, 893 (1997). The Court therefore examines whether there is any evidentiary support for her sex discrimination claim.

California courts rely on federal law as it relates to employment discrimination cases so the Court may consider both federal and state employment-discrimination law in evaluating Plaintiff's claim. *Mixon v. Fair Emp't & Hous. Comm'n*, 192 Cal. App. 3d 1306, 1316 (1987). A prima facie case of sex discrimination requires evidence of satisfactory performance, adverse employment action, and circumstances that suggest a discriminatory motive. *See id.* at 1316–18. If the plaintiff makes a prima facie case, an employer seeking to rebut it then has the burden to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id.* at 1318 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). If the employer carries this burden, the burden shifts again to plaintiff, who "has the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision." *Mixon*, 192 Cal. App. 3d at 1318 (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255–56 (1981).

Plaintiff has not made a prima facie case. The only evidence in the record supporting Plaintiff's claim is from her deposition. She said, "I know I felt they were favoring the younger males that had been brought into the department. Especially the ones that had degrees." (Erickson Dep., 174:16–19.) She does not explain how men were favored, and there is nothing wrong with favoring employees with degrees. She also said that she had heard someone in the department say, "We need to get more men in here." *Id.* at 175:9. But she does not say who said this. It could have been a coworker, not a supervisor. Even if it was a supervisor, there is no evidence tying these statements to her termination. *See Nesbit v. Pepsico, Inc.*, 994 F.2d 703, 705 (9th Cir. 1993) (affirming summary judgment for defendant in age-discrimination case where comments were not "tied directly to [plaintiff's] termination"). "Stray remarks in the workplace . . . cannot justify requiring the employer to prove that its . . . decisions were based on legitimate criteria." *Price Waterhouse v. Hopkins*, 490 U.S. 228, 277 (1989) (O'Connor, J., concurring).

But even assuming Plaintiff made a prima facie case, Defendant has shown legitimate, nondiscriminatory reasons for terminating her. Plaintiff was insubordinate and disruptive, and threatened to cause her superiors to lose their jobs. Defendant gave her

multiple warnings to improve her behavior, but she did not. Further, Defendant's nearly 75% female workforce and its special accommodations for pregnant women bolster its claim of nondiscriminatory purpose. Finally, as discussed above, by failing to respond to the requests for admission, she admitted there was no sex discrimination.

Plaintiff also asserts an age-discrimination claim based on public policy. But like her age-discrimination claim based on FEHA, this claim fails because she is not forty years old. *See Gibss*, 111 Cal. App. 4th at 799.

The Court **GRANTS** summary judgment in favor of Defendant on Plaintiff's fourth cause of action.

**4.     Fifth and Sixth Causes of Action for Wrongful Termination and Breach of Employment Contract**

Plaintiff's fifth and sixth causes of action allege Defendant breached an employment contract when it terminated Plaintiff. California law presumes that all employment is at-will—that is, either the employer or employee can terminate the relationship at any time and for any reason. *See Dore v. Arnold Worldwide, Inc.*, 39 Cal. 4th 384, 391–92 (2006). This presumption can be overcome by an express or implied agreement to the contrary. *Id.* at 391.

Here, there is no evidence in the record of an express employment contract that would overcome the presumption that Plaintiff was an at will employee. In fact, she signed several documents acknowledging her at-will status. (Not. of Lodg., Exs. H, I, J, K.)

There is also no evidence of an implied agreement requiring good cause for termination. In evaluating the existence of an implied employment agreement, courts consider (1) the employer's personnel policies, (2) the length of the employee's service, (3) any assurances by the employer, and (4) industry practice. *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 680 (1988). Here, Defendant's policies expressly said they employed Plaintiff at will. Plaintiff signed acknowledgments of the at-will nature of her employment. She admitted that she did not get any assurances from her employer, (Erickson Dep.

43:8–9), and she has not produced any evidence of industry practice. The only factor favoring an implied agreement is the length of her employment, which was six years. But that alone is insufficient to create an implied contract terminable only for cause. *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 341–42 (2000).

The Court therefore **GRANTS** summary judgment in favor of Defendant on Plaintiff's fifth and sixth causes of action.

## IV. CONCLUSION

The Court **GRANTS** summary judgment in favor of Defendant on all claims. The clerk shall enter judgment accordingly.

**IT IS SO ORDERED.**

DATED: June 25, 2010

Honorable Barry Ted Moskowitz
United States District Judge